16-5263 Howard Bloomgarden v. United States Department of Justice Mr. Lewis for the appellant, Ms. Lilly for the appellee. Mr. Lewis. Good morning, Torrance Lewis, Your Honors, for Plaintiff Appellant Howard Bloomgarden. The question here is whether the district court erred and whether the government lawfully withheld a termination letter of a former AUSA in the Eastern District of New York who'd been allowed to remain in his employment capacity while the government procured and You call it a termination letter, but you're not suggesting it's a final decision of the Justice Department. It was a proposed termination letter. That's right, Your Honor. Does that have any significance? Well, I think it does have the underlying... No, no. Is there a distinction between a termination letter and a proposed termination letter? Well, in this case, the proposed termination letter, we've got record evidence here that it was actually adjudicated by a final decision maker. Adjudicated? Well, or a final decision was rendered by the final decision maker in the case. Who? His name was Dennis Corrigan. You mean the counsel to the Deputy Attorney General? That's right, and that's at... All he did was say the case is over, the matter's over, right? Well, in the original... There's no reference in his opinion as to whether or not the proposed termination letter is correct or not correct, is there? In the response that we received originally from the National Archives, the individual who was reviewing whether to disclose those documents to us sent us an email indicating that one of the documents was the final decision. But I'm asking, was it? It was a final decision in the sense that that's the end of the matter. Well, no, so that... But there's no adjudication as to whether the proposed termination allegations were correct or not correct. So there were three letters that were housed. Is that correct, Mark? There's no final decision by an MSPB or the Justice Department as to whether the allegations in the proposed termination letter were all correct or not correct. Well, I think that it's right. We don't have a final decision on the second appeal if there was one. We don't know. That's right, but I'm just... To go back to the point about the National Archives, the original response that we received from them indicated that there were three letters. The only one that was ever disclosed was the one that you're talking about where Mr. Corrigan said, since this matter is finished, I'm no longer exercising jurisdiction. Right. I think the question or one issue that may be relevant as we think about this is whether what is said in this letter has been tested in any way and if it's being released as a kind of this is what happened and if the gravamen of your position is the public has a right to know what happened, is it really fair to treat this as what happened when it's a proposal on one side? And I would say that given that this is being decided on summary judgment, there's enough inference in the record that it was, first a final decision and then an appeal. Well, we know it preceded a final decision, but that doesn't mean... I mean, this is someone who... No, and again, that it went further and was litigated at the merits. No, there was an appeal, but it looks like it was withdrawn. There's no record of an MSPB decision. If you had an MSPB decision, we'd have an entirely different case. Yes, so we have the original. He was originally terminated. They tried to terminate him as probationary employee. He appealed that. At a certain point, then the government withdrew that termination. That's right. That was the first merit services MSPB, I'm sorry. And it was the only... I mean, it was the only that was followed through. There wasn't ever an adjudication on these allegations. That we're aware of, but there are two pieces of evidence in the record. The first is from the government itself, indicating that there is evidence that this case was appealed to the MSPB. And that's... Yeah, but the prior cases which have recognized if a matter is appealed, the public interest prevails over privacy, are all cases where when a case is appealed, there's a decision. Well, we don't have any case where there's an appeal, and then the case is withdrawn. Why should that be in the public interest? In other words, why is that even relevant if there's an appeal and it's withdrawn? Well, if the employee publicly challenged the allegations... Let's assume he challenged, but he withdrew. The question is, in the past cases where we've said, okay, now there's a public interest, there are cases which are public, like a public decision of the D.C. Circuit. So we have two pieces of evidence in the record. Again, you're right. We do not have a final adjudication on this second appeal, if there was one. But we do have these statements in the record from the government, and we also have in the record, and this is... But the government can only release documents that exist. They can't create documents in a FOIA case. They say there's nothing in the records of the Justice Department concerning the possible appeal. They do say there was an appeal is what I'm... Filed. Can I ask you to focus on the public interest, which really seems like that's the make-or-break point for your case. Yeah, I think... What is the public interest in having this particular document revealed? Well, I think that the public interest would be that... First of all, I think that this is a United States prosecutor who's prosecuting cases in the government's name. This is a United States government lawyer. It doesn't matter whether he's a prosecutor or she is a civil rights lawyer or a lawyer in OLC or in the Swiss General's Office, right? The fact that it's a prosecutor is not particularly relevant, is it? I think it might be. Why? Well, just because they're bringing cases, criminal cases, that impact life, death. They should be treated differently than a civil rights lawyer who brings civil cases and sometimes... I would argue that that's arguable, that they should, based on the impact they can have on people's lives and the control they have over people in terms of charging decisions. As you see, there's a slippery slope on all personnel actions dealing with all people who are in some way bearers of governmental authority, which arguably could also be awesome when the lawyers are acting in other capacities. But so more about something that happened 25 years ago with respect to one individual. What's the public going to learn about what? Well, I mean, I think that it would be the same thing you would be learning if you uncovered evidence of misconduct in decades-old cases where you had someone who was prosecuting multiple criminal defendants and those people might still be in jail, they might still be impacted by those prosecutions, and people want to know. I mean, people have an interest in whether people have been wrongfully accused, prosecuted, and whether or not the government is playing fair. I was going to reserve some time for rebuttal, if I might. Okay, thank you. We'll hear from Janie Lilly. Good morning, Your Honors. I'm Janie Lilly for the Department of Justice. The district court correctly balanced the public interest, which it found to be minimal, in this 20-year-old proposed disciplinary letter against the significant privacy interests of the former prosecutor whose work performance was evaluated in the proposed disciplinary action. And you're not asserting the privacy interests of other people involved and mentioned in the letter? We did in district court, but the district court, the basis for its decision was on the privacy interests of the former AUSA, whose work performance was evaluated in the proposed letter. Are we supposed to give any deference to the district judge's balancing of the public interest against the clearly unwarranted invasion of privacy, or is that strictly de novo? We give no deference at all to the district judge's balancing? Well, Your Honor. That's sort of puzzling me.  Here, the strict standard of view is de novo, but here where the district court in fact reviewed the document in camera and determined that there was only a minimal public interest in the contents of the letter. Do we give any deference to the district judge, yes or no? It would be appropriate to do so, Your Honor. We also reviewed the document in camera, and so I'm not sure what we're deferring to. That's right. It is possible for this court to review it, and therefore no deference would be necessary, but where the district court has engaged in it. I was trying to puzzle under the statute whether we're entitled, even allowed to give any deference to the district judge. Oh. It's a separate question. So what about the public interest? There's a question been raised here. Here was somebody who apparently failed to perform in a way that allowed him to remain in the job, and an individual who was prosecuted directly by him, and there is a grave liberty interest of the highest order when we're talking about putting people in prison. So why isn't it the public interest that the public should know about what happened here? Certainly Mr. Billengarten's own personal interest isn't relevant under the FOIA calculus for public interest. Did I say it was? I'm saying the notion that Mr. Lewis has posed is this is something that the public cares about. How do prosecutors do their job when somebody is facing charges and there are, as you know, very strict guidelines and rules that constrain and guide prosecutors, and here's somebody who apparently didn't follow those in some unknown way. Doesn't the public want to know? Well, Your Honor, this court has held, in cases involving more serious allegations of misconduct like the Kimberlin case, that the public has a minimal interest in. Kimberlin was under Section 7, wasn't it? It was under Section 7C, but there the court was engaged in a similar balancing of the public interest and the privacy interest and found that the public interest, where there had been admissions of misconduct in the OPR investigation, that the details of that investigation, that there was a limited public interest in the details of the investigation, Your Honor. You said it's a similar balancing, but it's not quite a similar balancing. It's not exactly the same. There's a stronger tilt toward disclosure under Section 7. But the court's analysis of the public interest there and its characterization of the public interest, where you were talking about an AUSA who had admitted the misconduct, admitted that he was, in fact, disciplined, that the public's interest in the investigation, investigation materials in those cases, was limited, given the attorney's role and the type of misconduct alleged. Here's the district court has characterized that this is sort of garden variety insubordination, not of even the same magnitude of misconduct. Could it be argued that there's a public interest in knowing how hard it is to fire lawyers in the Justice Department who don't do a good job, which could run across the whole Justice Department? Your Honor, that would eviscerate the application of Exemption 6 to most personnel files, and there would be a limited public interest even in understanding how the Justice Department went about its disciplinary proceedings 20 years ago as the district attorney. Twenty-two, 23 years ago. Yes, Your Honor. Is there anybody in the Justice Department still around there? Is there any indication that this case, if there was a case, is reflective of what the present policy is? Your Honor, I can't speak to the ins and outs of every disciplinary proceeding, but I don't think that there have been any allegations that this would shed any light on current practices, and, in fact, the district court held to the contrary, that there was a limited public interest in unearthing details about how the U.S. Attorney's Office many, many years ago engaged in disciplinary proceedings. But you're not contending that just because it may show past practices that the public has no interest in learning what past practices were? You're not arguing that, are you? I'm not making a general argument about past practices or any historical value, but just in this case, the district court found that there's nothing to be gleaned for the public about the way discipline was conducted in a particular case 20 years ago. What if it were allegations that he was trying to get witnesses to provide false testament and that that had gone on for several years, and it took several years for there to be a proposed termination? Would the public have interest in that? No, that was not the case here because the district court reviewed the documents and found that there was no allegations of misconduct. I understand. I said suppose. Then maybe there would be, depending on the facts of the case and the type of misconduct alleged, there might be a public interest along those lines here where the district court- What if it were Brady violations, repeated Brady violations over the course of many years? Your Honor- Would there be a strong public interest there? There might, in fact, be- There was such a case a few years ago involving a United States senator where the Justice Department lawyer, plus the FBI agent, declined to turn over to the Defense Council shockingly relevant Brady material, and as I recall, a district judge actually had to direct an investigation of that, and what the Justice Department ended up doing is giving these two individuals one a 40-day suspension and another a 15-day suspension, where the argument could have been- where it's exactly the hypothetical that Judge Wilkins is referring to. I don't know if in that case whether- It's all public. Everything's public because there was both the Office of Public Professional Responsibility and, of course, the district judge had someone, an independent authority, investigate it. But that was a case involving exactly the awful failure to comply with Brady that Judge Wilkins referred to. That's not this case. Certainly not this case, Your Honor. This lawyer was pretty lackadaisical and incompetent, but with the exception of promising a defendant that he might get some benefit that he didn't get, this lawyer did not do a series of actions designed to interfere with defendants' rights. The thing I find hard to assess about the public interest is the cases talk about it- there has been misconduct, but I take the government's position to be if a judge has looked at it and said there isn't misconduct here, then the public doesn't have an interest. But doesn't the public also have an interest in knowing when things are going well? In dispelling the suspicion- and this isn't just personal to Mr. Bloomgarten- but in dispelling the suspicion that something more nefarious took place. But obviously if one were to go down that road, then everything would have to be open. So you're basically asking the public to rely on the in-camera, kind of gatekeeping judgments of someone in the position of either us or the district judge here. In this case, yes, Your Honor, where the district court has reviewed it and determined that there is no public interest in this material. There's not misconduct by a senior-level official of the type that this court has found would satisfy the public interest and would outweigh the privacy interest in this type of document. What about a situation in which there wasn't misconduct, but there was a lot of neglect? Would that satisfy the public interest standard? There's big power being used by a lot of people, and there's just neglect, let's say hypothetically, of constraints on that. Without more, Your Honor, I'm not sure that I can speculate about the nature of the neglect or the type of neglect. But under this court's case law, the court looks to the nature of the allegations of misconduct and the rank of the official who was implicated in the disciplinary action. Here, we don't have an adjudication on the proposed discipline, and we don't have the type of misconduct that this court has found to be sufficient in similar cases. On the privacy interest, do we know anything about what Granger thinks about whether this is a privacy problem? When you're asserting a privacy interest, you're asserting it on behalf of a category of people similarly situated to him and the records holder's interest in the privacy of the people whose records it holds? Yes, Your Honor. All right. We're asserting on behalf of the former AUSA. But you do know that he is a practicing lawyer in New York? That has been asserted by Point of View. But it wouldn't matter to you if he said, fine, clear my name, I'd rather this be released. That wouldn't matter. It's sort of like when the government asserts presidential privilege, even when the sitting president says to his lawyer, hey, maybe it would be better for me if we let this out. There's an institutional interest in the privacy of a former AUSA in personnel matters? There's an interest here where there's not been any such waiver, and there would be a privacy interest in those whose evaluations were given. We might be here asserting different privacy interests. If Granger came in and said, I don't have a privacy interest, what would your position be? Your Honor, then it would be a very different case. I think we'd be looking at the nature of the documents and who else's privacy interests might be asserted. But it would stand to reason that even in that case, we could assert the privacy interest in the personnel records. Actually, if Granger wanted it disclosed, he could seek it under another statute. Yes, Your Honor. So that would be legitimately a different case. Yes, Your Honor. There's no indication. I think he could seek it under the Privacy Act. That's not right. Something along those lines, Your Honor. So I'm trying to understand the government's position. This is an Exemption 6 case where it's tilted more towards disclosure than 7C, where most of these cases come up. Or is it showing up clearly more into privacy? Where there is a balancing that has to take place where we have to find that the public interest clearly outweighs, not that it might, but that it does clearly outweigh the privacy interest. Yes, Your Honor. We don't have an assertion of a privacy interest by the individual involved that's in the record. So we're just kind of assuming that he has one. But the fact that there was a proposed termination and there was litigation over that before the MSPB and all of that is of public record. And to be clear, Your Honor, the litigation before the MSPB was on the initial termination that was... Probationary. When he was treated as a probationary employee, when it was determined that he was not a probationary employee, that's when the government proposed the letter that it issued here. So there is no public MSPB decision that refers even vaguely to this proposed termination here. Is that what you're saying? No, Your Honor. We have no evidence of an MSPB final decision. Your answer to that question should have been yes. You want to listen carefully. I think I... I know what you meant. You meant there is none. But he added... You're right, Your Honor. There is no evidence of a final MSPB decision. So I apologize for the form of my answer, but I want to be clear that we have no evidence of a final MSPB decision on the allegations contained in the proposed termination letter. Or a final decision by anybody. No, Your Honor. Plaintiffs have pointed to a one-cents letter. No adjudication of the accuracy of the allegations. No, Your Honor. None in EOUSA. Just to circle back on that, I'm trying to understand the nature of the privacy interest and the posture in which the government asserts them. The government is asserting an interest in Granger's privacy and potentially also in the privacy of other individuals who might have been involved, let's say, in a supervisory role in this personnel action? Yes. The government is asserting those interests. Those were the interests that we asserted in the district court. The district courts... And you continue to rely on those, the interests of the AUSA involved and of other people who might or might not have taken various actions with respect to him or identified. Yes, Your Honor. Yes. Those continue to be privacy interests at issue in the letter. And how are we the way privacy interests asserted as to acts that were taken in the court of record, such as failing to file an indictment within the 30-day time period or failing to respond to a judge's inquiry or something of that nature? I mean, how are we to determine how strong that privacy interest is as opposed to something that doesn't happen on the record in court? So the privacy interests that are asserted here with respect to the proposed letter, which evaluates the AUSA's performance as described by the district court, there were various documents that were released by the government pursuant to the district court's order that were filings in the court, for instance. Those documents are not at issue in this appeal. The government was ordered to release those and has released attachments to the proposed letter that contained filings in the courts. And so your argument is then that that does not undermine the fact, not disclose the parts of the letter that discuss those incidents? Precisely, Your Honor. And why does it? The evaluation of someone's performance is at the heart of the privacy interest that's protected by Exemption 6 and personnel records. The supporting documents that may provide some support for that evaluation or the basis for the evaluation, the court ordered disclosed. And the two are distinct. Okay, Ms. Lilley, thank you. Thank you. Mr. Lewis, we gave Ms. Lilley quite a bit of additional time, and so we'll give you some rebuttal. Thank you, Your Honor. Three minutes. Just one point, just quickly. I believe that the government has waived advocating on behalf or raising third-party interests here. I think the only privacy interest that they've alleged and are arguing on appeal is for Mr. Granger. So that would be the first. That's not what I heard from the government. No, I'm just saying their papers contain no assertion of third-party liability or privacy rights here or interests. So you're saying they forfeit them and the district court relied on them? Well, I'm not sure the district court did either, but they didn't raise it on appeal. I just wanted to get back to, and then one other item, on the 6 v. 7c. You know, we haven't seen the letter. Your Honors have or can. The district court judge saw it and the government's seen it, so we don't know exactly what's in there. We've got what the judge has put on the record in terms of this was willful disobedience or garden variety misconduct, professional misconduct, or what have you. So, you know, we're kind of litigating a little bit blindly, but I would say that all of the cases that are being cited and that were cited by the district court are all under 7c, save one district court case, which is Parker. Do you think it's fair to say it's very hard for senior officials in the Justice Department to discharge government lawyers? I'm sorry, Your Honor? Would you think it's probably true that it's very difficult for senior officials in the Justice Department to discharge government lawyers? I think it absolutely is. And so, I mean, to me this makes this case rarer than a lot of the other ones that are pointed to for support, such as Kimberlin Parker, where there's, you know, a single incident of discipline where there might have been, you know, and they weren't related to the casework that that prosecutor or attorney was doing. So that's your public interest. You want to establish that it's too difficult to fire government lawyers, and thereby Congress perhaps should consider legislation such as that was passed for the Veterans Administration twice in order to make it easier to fire government lawyers. That's your public interest? Well, that's not my public interest, Your Honor. Well, why isn't it? I mean, I think that... I thought that's what you were getting at. No, I mean, I think that it is incredibly difficult, and that makes this a rare case, and so it's... It's a rare case because somebody was actually proposed to fire... Well, and removed, which I think was stipulated to ultimately. I mean, left, left service under this cloud. So I think that was stipulated to below. So I think that's a rare case. Well, I thought if you're talking about the public interest, you were talking about what is the pattern here. This is a case that reflects the pattern, and I suppose your argument is the pattern is it's too difficult. The public should know how difficult it is to fire a government lawyer. I think that's one aspect. It sounds like the Attorney General would be very interested in your interest. The rare case is a tough position to make because if the public interest is in seeing what its government is up to, and this is an aberration, and it happened 25 years ago, what does it tell today's public about what its government is up to? You see it from soup to nuts. You see its inception until the very end. You don't see it half-cocked. You don't see some minor thing that's been retracted or dismissed. You actually would see it here, I think. I think there's an interest in the rare case because it shows it all. It being? The process by which you have to terminate and for what reason you permit a prosecutor to do 3,700 pages worth of evidence of misconduct, however you want to describe that. I think that's in the public interest. As you've seen from the disclosures, 3,700 is a lot of bulky pleadings that support various points. It's cases, though. Obviously, whatever misconduct was going on spilled over. I think it's a fair inference that if he was playing fast and loose with the government's rules, he was probably doing it with criminal defendants also, witnesses. Thank you, Mr. Lewis. The case is submitted.
judges: Pillard, Wilkins, Silberman